IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| DONALD M.,[1] § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:18-cv-00711-O-BP |
| § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff filed this action under 42 U.S.C. § 405(g) seeking judicial review of the unfavorable decision by the Commissioner of the Social Security Administration ("Commissioner") regarding his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). (ECF Nos. 1, 14). After considering the pleadings, briefs, and the administrative record, the undersigned recommends that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision.

**I.   STATEMENT OF THE CASE**

Plaintiff applied for DIB on July 16, 2015, alleging disability based on degenerative disc disease of the lumbar spine, osteoarthritis of the left shoulder, and depression. (ECF No. 14 at 5-6; Tr. 19). The Commissioner initially denied his DIB application on November 19, 2015 and again upon reconsideration on April 11, 2016. (Tr. 17). He timely filed a request for a hearing before an administrative law judge ("ALJ"). (*Id.*). Plaintiff attended the hearing on June 8, 2017 in Fort Worth, Texas and testified. (*Id.*). Also present were his attorney and a vocational expert

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies the plaintiff only by first name and last initial.

("VE"). (*Id.*). On October 2, 2017, the ALJ rendered a decision finding that Plaintiff was not disabled. (Tr. 17-28).

Specifically, the ALJ employed the statutory five-step analysis and established during step one that Plaintiff had not engaged in substantial gainful activity since May 5, 2015. (Tr. 19). At step two, the ALJ determined that he had the severe impairments of degenerative disc disease of the lumbar spine and osteoarthritis of the left shoulder. (*Id.*). At step three, the ALJ found that his impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Pt. 404(p). (Tr. 21). The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a). (*Id.*). At step four, the ALJ determined that Plaintiff was unable to perform his past relevant work. (Tr. 26). And at step five, the ALJ decided that there were a significant number of jobs in the national economy that Plaintiff could perform. (*Id.* at 26-27).

The Appeals Council denied review on April 23, 2018. (Tr. 1-7). Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

II.     **FACTUAL BACKGROUND**

According to his pleadings, testimony at the administrative hearing, and the administrative record, Plaintiff was fifty-six years old on the alleged disability onset date of May 5, 2015 and fifty-eight years old at the time of the administrative hearing. (Tr. 17, 26). He completed high school and has an employment history that includes work as a police sergeant and truck driver. (ECF No. 14 at 4; Tr. 26). Plaintiff asserts that his physical and mental impairments render him disabled under the SSA.

**III.     STANDARD OF REVIEW**

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a "medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months" that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means work activity involving the use of significant physical or mental abilities for pay or profit. *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002). Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see Stone v. Heckler*, 752 F.2d 1099, 1100-03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to his past relevant work. 20 C.F.R. § 404.1520(e). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. *Crowley v. Apfel*, 197 F.3d 197, 197-98 (5th Cir. 1999); 20 C.F.R. § 404.1520(g). "The claimant bears the burden of showing that [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the

claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC—"the most [a claimant] can still do despite [his] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1).

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). "It is more than a mere scintilla and less than a preponderance." *Id.* "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## IV. ANALYSIS

Plaintiff raises three issues on appeal: (1) the ALJ failed to recognize and consider all of his vocationally significant impairments; (2) the ALJ improperly substituted his own medical judgment for the medical opinion evidence of record; and (3) the ALJ failed to carry his burden of establishing the existence of other work, in significant numbers, that Plaintiff can perform. (ECF No. 14 at 7-12).

### A. The ALJ Recognized and Considered all Vocationally Significant Impairments.

Plaintiff first argues that the ALJ did not apply the correct legal standard at step two of the sequential evaluation in determining whether he has a severe impairment. (ECF No. 14 at 7-8). Plaintiff argues that this legal error was prejudicial because the ALJ failed to consider all his severe impairments. (*Id.* at 9).

A non-severe impairment is "[a]n impairment or combination of impairments . . . [that] does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a) (1984). "An impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101 (citing *Estran v. Heckler*, 745 F.2d 340 (5th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)); *see also Martin v. Heckler*, 748 F.2d 1027, 1032 (5th Cir. 1984) and *Davis v. Heckler*, 748 F.2d 293, 296 (5th Cir. 1984).

The court in *Stone* reasoned that unless the ALJ and Appeals Council apply the correct severity standard as "set forth by reference to this opinion or another of the same effect, or by an express statement that the construction [the Fifth Circuit] . . . give[s] to 20 C.F.R § 404.1520(c) (1984) is used," then it "will in the future assume that the ALJ and Appeals Council have applied the incorrect standard . . . ." *Stone*, 752 F.2d at 1106. Furthermore, the court held that "[u]nless the correct standard is used, the claim must be remanded to the Secretary for reconsideration." *Id.* The *Stone* case did not address whether applying the incorrect legal standard to the severity requirement prejudiced the claimant's substantial rights before determining that remand was necessary. *See id.*

The court later determined that an ALJ's failure to apply the correct legal standard to the severity requirement does not automatically warrant remand. *Taylor v. Astrue*, 706 F.3d 600, 603

5

(5th Cir. 2012). In *Taylor*, the court explained that unless a claimant's substantial rights are affected by the ALJ's failure to apply the correct legal standard, such error is harmless, and automatic remand is unwarranted. *Id.* (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)).

　　*1.　The ALJ did Not Err in Applying an Incorrect Legal Standard of Severity*.

　　In applying this authority, the ALJ employed an incorrect legal standard to determine whether Plaintiff had a severe impairment. The ALJ stated that

> [a]t step two, [he] must determine whether the claimant has a medically determinable impairment that is 'severe' or a combination of impairments that is 'severe' (20 CFR 404.1520(c)). An impairment or combination of impairments is 'severe' . . . if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1522; Social Security Rulings (SSRs) 85-28 and 16-3p).

(Tr. 18). The difference between this standard and the one stated in *Stone* is slight. However, the ALJ applied the incorrect legal standard.

　　Nevertheless, the Commissioner argues that the *Stone* legal standard is irrelevant "[o]nce the [ALJ] proceeds past step two of the sequential evaluation . . . ." (ECF No. 15 at 2). In the Commissioner's view, because the ALJ's determination of disability turned on later steps in the sequential evaluation and not on the severity of Plaintiff's impairments, "the *Stone* issue is disingenuous." (*Id.*). To support her argument, the Commissioner cites *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987), *Jones v. Bowen*, 829 F.2d 524, 527 n.1 (5th Cir. 1987), *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987), *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988), *Moon v. Bowen*, 810 F.2d 472, 473 (5th Cir. 1987), and *Stone v. Astrue*, No. 4:08-CV-598-A, 2010 WL 2164414, at *2 (N.D. Tex. May 27, 2010).

Two of the cases cited by the Commissioner apply here. The court in *Chaparro* held that because claimant's case did not turn on whether his impairment was severe, but on whether he could return to his past relevant work, his argument that the ALJ applied the incorrect definition of severity was irrelevant. 815 F.2d at 1011. Likewise, this Court in *Stone v. Astrue* held that whether the ALJ applied the correct legal standard to the severity requirement is a non-dispositive issue if the ALJ proceeds to later steps of the sequential evaluation. 2010 WL 2164414 at *2.

The decisions in *Adams*, *Jones*, *Mays*, and *Moon* are distinguishable because they involved situations where the ALJ never explicitly addressed the severity requirement, but instead referred to claimant's impairments as "significant" or "mild," or merely reached the fifth step of the sequential evaluation while brushing past the severity requirement. Unlike those cases, the ALJ here explicitly addressed the severity requirement and determined that Plaintiff had the "severe" impairments of degenerative disc disease of the lumbar spine and osteoarthritis of the left shoulder. (Tr. 19).

Plaintiff disagrees with the Commissioner on this point. (ECF No. 16 at 3). Plaintiff cites *Loza v. Apfel* for the proposition that application of the correct legal definition of severity, as set forth in *Stone*, is dispositive because the ALJ determined that the claimant's impairments were non-severe. 219 F.3d 378, 392-93, 399 (5th Cir. 2000). Plaintiff also cites *Bragg v. Comm'r of SSA* to show that the Fifth Circuit always has held that "[a] failure to use the correct standard of severity is sufficient to remand for further consideration even when the denial of benefits occurred subsequent to Step 2 of the sequential process." 567 F. Supp. 2d 893, 907 (N.D. Tex. 2008) (citing *Loza*, 219 F.3d at 398-99) (*see also Key v. Astrue*, No. 3:06-CV-1087-N, 2007 WL 2781930, at *4 (N.D. Tex. Sept. 4, 2007) (same)). In *Bragg*, the court further stated that an argument to the contrary was rejected in this Court. 567 F. Supp. 2d at 907 (citing *Key*, 2007 WL 2781930 at *4).

*See also Lawson v. Astrue*, No. 4:11-CV-00426, 2013 WL 449298, at *3 (E.D. Tex. Feb. 6, 2013) (same as *Bragg* and *Key*).

The undersigned finds the Commissioner's arguments on this issue more persuasive. This Court in *Stone v. Astrue* interpreted *Chaparro* as standing for the proposition argued by the Commissioner regarding this argument. *Stone*, 2010 WL 2164414 at *2. And after a thorough reading of *Loza*, the undersigned disagrees with Plaintiff's argument that this case requires reversal here. The court in *Loza* determined that the ALJ committed legal error and remanded the case for several reasons, including that the ALJ did not apply the correct legal standard at step two of the sequential evaluation after determining the claimant's case at that step. *Loza*, 219 F.3d at 392-98. The ALJ there did not get past step two before finding that the claimant was not disabled, which the Fifth Circuit held to be reversible error by the ALJ. Here, the ALJ analyzed Plaintiff's case past step two in determining that he is not disabled. (Tr. 17-28). As for the district court authorities at issue, *Stone* was decided in 2010 in this Division, while the cases from this Court that Plaintiff cites were decided earlier. The other case Plaintiff cites, *Lawson*, was decided by the Eastern District of Texas and is not binding authority on this Court. Thus, the undersigned concludes that although the ALJ did not apply the correct legal standard, this error is irrelevant because he proceeded past step two of the sequential evaluation. *Chaparro*, 815 F.2d at 1011; *Stone v. Astrue*, 2010 WL 2164414 at *2; *Taylor*, 706 F.3d at 603.

> 2. *Even if the ALJ Applied an Incorrect Legal Standard to the Severity Requirement, this Error did Not Affect Plaintiff's Substantial Rights.*

Plaintiff argues that the ALJ's error affected his substantial rights because had the ALJ applied the correct legal standard, he would have determined that Plaintiff "has a severe affective disorder which limits him to understanding, remembering, and carrying out detailed but not complex tasks." (ECF No. 14 at 10). Moreover, Plaintiff argues that had the ALJ recognized his

8

"severe affective disorder," he "would not have qualified for the jobs relied upon by the ALJ at step 5 of the sequential evaluation of disability." (*Id.*).

The ALJ's error in applying an incorrect legal standard to the severity requirement did not affect Plaintiff's substantial rights. This is because the evidence in the record does not support a conclusion that Plaintiff has a severe affective disorder. The evidence that suggests otherwise comes from Plaintiff's self-reporting, which is inconsistent. (Tr. 173; Tr. 194-95; Tr. 200; Tr. 214-15; Tr. 254; Tr. 264; Tr. 275-76). The record reflects that Plaintiff can drive himself to doctor's appointments, weekly church services, and the store. (Tr. 36; Tr. 54; Tr. 273). Although he complains of being unable to concentrate and remember items, he watches television programs such as football; can calculate "serial 3's" with 100% accuracy, though not "serial 7's;" and recalled 1/3 items after a five-minute delay. (Tr. 40; Tr. 54). He does not require reminders; can follow instructions; and adapts fairly, or well, to changes in routine. (Tr. 54; Tr. 72-73; Tr. 194). Plaintiff remains socially interactive, attends weekly church services, and entertains family and friends who visit his home. (Tr. 42).

During one of Plaintiff's consultative exams, a medical professional noted no history of depression and no treatment for emotional or mental conditions that affect his ability to work. (Tr. 53; Tr. 69; Tr. 176). His mood and affect were characterized as appropriate with no suggestive evidence of a mental condition and as having a minimal impact on his ability to engage in substantial gainful activity. (Tr. 54; Tr. 67; Tr. 261; Tr. 273). Consistently throughout the medical evidence of record, his concentration and ability to remember were ranked at either mild or moderate levels. (Tr. 55; Tr. 58-59).

Although Plaintiff's mood or attitude may have been secondarily affected temporarily due to his lower back injury (Tr. 190; Tr. 194), his mood appears to have improved thereafter. (Tr.

9

423). As late as June 13, 2016, Plaintiff had not received psychological treatment or been prescribed anti-depressant medication, though his depression allegedly began shortly after his back injury in May 2015. (Tr. 274; Tr. 290).

Additionally, Plaintiff saw Kyle Babick, Ph.D. on June 25, 2016. (Tr. 363). According to Dr. Babick, Plaintiff's medical records regarding depression stemmed from his self-reporting and were not verified. (*Id.*). During this consultation, Dr. Babick also noted that Plaintiff was "starting to have a depressed mood." (Tr. 364). Dr. Babick stated that he seemed discouraged and downcast at times, but the doctor did not observe psychotic processes; he had regained ten of the twenty to twenty-five pounds he had lost, he was "up and active" every day, and denied suicidal or homicidal thoughts. (Tr. 365). Dr. Babick assessed his depression at mild to moderate levels. (Tr. 367). Dr. Babick recommended that he receive psychological interventions "*if* he start[ed] to show symptoms of depression." (Tr. 368) (emphasis added). Dr. Babick elaborated on his recommendation by noting that Plaintiff's pain levels were mild to moderate, but that because he is "pain sensitive," he tends to "overreact" to the fear of potential pain or reinjury. (Tr. 369).

Only after Dr. Babick's psychological report and recommendation did Plaintiff undergo cognitive behavioral therapy and cognitive pain management training to combat his depressive mood. (Tr. 369). On December 16, 2016, Dr. Babick wrote to one of Plaintiff's treating physicians, Amit Darnule, M.D., noting that he "was seen for individual psychotherapy and review of behavioral pain management techniques on September 29th, October 5th and 19th, and November 16th." (Tr. 423). Dr. Babick informed Dr. Darnule that Plaintiff "continued to make progress, and [that] this letter . . . serve[d] as a discharge note as well." (*Id.*).

This substantial medical evidence of record supports the ALJ's conclusion that Plaintiff does not have a severe affective disorder. Thus, Plaintiff's rights were not affected by the ALJ's error in applying the incorrect legal standard of severity.

### B. The ALJ did Not Improperly Substitute His Medical Judgment for the Medical Opinion Evidence of Record.

Plaintiff argues that the ALJ improperly substituted his medical judgment for the opinion evidence of record. (ECF No. 14 at 10-11). In support, Plaintiff notes that although the treating surgeon, consultative examiner, psychological consultant, and both state agency medical consultants found a vocationally significant mental impairment that affects his ability to perform work-related activities, the ALJ disagreed. (*Id.*).

The Commissioner responds that "[w]hat [Plaintiff] characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine his capacity for work." (ECF No. 15 at 7 (citing *Taylor*, 706 F.3d at 603)). The Commissioner argues further that "the ALJ . . . properly interpret[ed] the medical evidence to determine [Plaintiff's] capacity for work." (*Id.* (citing *Baez v. Colvin*, No. 4:14-CV-414-A, 2015 WL 5595249, at *4 (N.D. Tex. Sept. 22, 2015 and *Taylor*, 706 F.3d at 603)).

The ALJ determined that Plaintiff's "mental impairment of depression does not cause more than minimal limitation in [his] ability to perform basic mental work activities and is therefore non-severe." (Tr. 20). Dr. Babick's opinion drafted on December 16, 2016 in which he stated that Plaintiff's Global Assessment of Functioning was transient supports this determination. (Tr. 418). Dr. Babick also noted that Plaintiff had reactions to daily stressors that were as expected with not more than slight and temporary impairment and mild to moderate psychological symptoms with mild to moderate impairment of daily functioning. (Tr. 419).

The ALJ also relied upon "the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1)." (Tr. 20). The ALJ explained that "[t]hese four areas of mental functioning are known as the 'paragraph B' criteria." (*Id.*). "The first functional area is understanding, remembering, or applying information." (*Id.*). In this area, the ALJ determined that Plaintiff has a mild limitation. (*Id.*). "The next functional area is interacting with others." (*Id.*). In this area, the ALJ determined that he has no limitation. (*Id.*). "The third functional area is concentrating, persisting, or maintaining pace." (*Id.*). In this area, the ALJ determined that Plaintiff has a mild limitation. (*Id.*). "The fourth functional area is adapting or managing oneself." (*Id.*). In this area, the ALJ determined that he has no limitation. (*Id.*). The medical evidence of record supports the ALJ's findings. (*See* Tr. 36; Tr. 40; Tr. 42; Tr. 54-55; Tr. 58-59; Tr. 72-73; Tr. 194; Tr. 261; Tr. 273; Tr. 365; Tr. 367; Tr. 418-19; Tr. 439). Thus, the ALJ did not improperly substitute his medical judgment in place of the medical opinion evidence of record.

  **C.** **The ALJ Properly Established the Existence of Other Work, in Significant Numbers, that Plaintiff can Perform**.

Finally, Plaintiff argues that when questioning the VE at the hearing, the ALJ erred by not inquiring "as to how many such jobs exist in the region of the country in which he resides, or in several regions of the country." (ECF No. 14 at 13). Plaintiff asserts that the ALJ "failed to carry his burden of establishing the existence of other work, in significant numbers, which [he] can perform." (*Id.*). The Commissioner argues that the ALJ determined that Plaintiff possessed transferable skills that are applicable to other jobs and would need to make very little, if any, vocational adjustments in terms of tools, work processes, work settings, or the industry. (ECF No. 15 at 9). Given this determination, the Commissioner argues that Plaintiff can perform a full range of sedentary work. (*Id.*). The Commissioner further argues that "the ALJ properly applied the

Medical-Vocational Guidelines in determining that Plaintiff could perform a significant number of jobs existing in the national economy." (*Id.*). Thus, the Commissioner concludes that the ALJ "was not required to question the vocational expert regarding the specific number of jobs available." (*Id.*).

Plaintiff concedes that the Commissioner's argument would be correct but for the fact that he has a vocationally significant non-exertional impairment, the affective disorder of depression. (ECF No. 16 at 5-6). He argues that the ALJ could not have used the Medical-Vocational Guidelines to conclude that a significant number of jobs existed in the national economy without questioning the VE about this subject at the hearing. (*Id.* at 6). In his reply brief, Plaintiff notes that "[n]o table rule applies to direct a conclusion of 'Disabled' or 'Not disabled' where an individual has a non[-]exertional limitation or restriction imposed by a medically determinable impairment." SSR 83-14. The RFC upon which each table rule is based reflects the absence of any non-exertional limitation. SSR 83-11.

> Where an individual's exertional RFC does not coincide with the definition of any one of the ranges of work . . . the occupational base is affected and may or may not represent a significant number of jobs in terms of the rules directing a conclusion as to disability . . . . Where the extent of the erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource.

SSR 83-12. In applying the rule that Plaintiff referenced, the ALJ properly relied upon and applied the Medical-Vocational Guidelines despite not asking the VE whether there were a significant number of police clerk and complaint evaluation officer jobs in the national economy. This is because the ALJ had already properly determined that Plaintiff's alleged affective disorder of depression did not constitute a vocationally significant non-exertional limitation. As a result, Plaintiff's argument lacks merit, and the ALJ's decision should not be reversed on this basis.

## V. CONCLUSION

Although the ALJ applied the incorrect legal standard to the severity requirement, this issue is irrelevant because he proceeded past step two of the sequential evaluation. Even if the ALJ's error were relevant, it did not affect Plaintiff's substantial rights because sufficient evidence supported the ALJ's determination that Plaintiff did not have a severe affective disorder in the form of depression. Moreover, the ALJ properly interpreted the medical opinion evidence of record rather than substituting his medical judgment. Finally, the ALJ properly concluded that Plaintiff can perform a significant number of jobs existing in the national economy without questioning the VE about this subject at the hearing.

## RECOMMENDATION

After considering the pleadings, briefs, and the administrative record, the undersigned recommends that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district

court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed **July 2**, **2019**.

*/s/ Hal R. Ray, Jr.*
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE