IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DONALD DWAYNE MCFARLAND, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:18-cv-00711-O |
| | § | |
| ANDREW SAUL, Commissioner | § | |
| of the Social Security Administration, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Plaintiff Donald Dwayne McFarland ("Plaintiff") filed this action seeking judicial review of a final adverse decision of the Commissioner of Social Security (the "Commissioner"),[1] who denied his application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(b), the case was referred to United States Magistrate Judge Hal R. Ray, Jr., for review and submission of proposed findings of fact and recommendation for disposition. On July 2, 2019, the United States Magistrate Judge filed his Findings, Conclusions and Recommendations (the "Report"), in which he recommended that the Court affirm the Commissioner's decision and dismiss Plaintiff's appeal. Report, ECF No. 17. Plaintiff filed timely objections to the Report. Objections, ECF No. 18. The Commissioner did not file a response to Plaintiff's objections.

---

[1] On June 17, 2019, Andrew Saul assumed the office of Commissioner of the Social Security Administration, replacing Nancy A. Berryhill, who was the Acting Commissioner of the Social Security Administration. In accordance with Federal Rule of Civil Procedure 25(d), the Court automatically substitutes Andrew Saul as Defendant.

**Order - Page 1**

After an independent review of the pleadings, objections, file, record, applicable law, and Report, for the reasons explained below, the Court determines that the magistrate judge's findings and conclusions are correct and **ACCEPTS** them as those of the Court. Accordingly, the Court **OVERRULES** Plaintiff's objections, **AFFIRMS** the Commissioner's decision, and **DISMISSES** this appeal **with prejudice**.

I.   BACKGROUND

Plaintiff Donald Dwayne McFarland ("Plaintiff") alleges he is disabled due to a variety of ailments, including degenerative disc disease of the lumbar spine, osteoarthritis, and depression. After his application for disability insurance benefits was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on June 8, 2017, and resulted in a decision denying disability benefits.

The ALJ followed a five-step sequential process prescribed in 20 C.F.R. § 404.1520(a)(4) and concluded as follows: (1) Plaintiff has not engaged in substantial gainful activity since May 5, 2015, the alleged onset date; (2) he has severe impairments of degenerative disc disease of the lumbar spine and osteoarthritis of the left shoulder, but his mental health impairment of depression is not severe; (3) he does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404(p); (4) he has the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a); and (5) he is incapable of performing his past relevant work as a police sergeant or a truck driver, but there are a significant number of jobs in the national economy that he could perform, such as a police clerk and a complaint evaluation officer. The ALJ, therefore, concluded that Plaintiff had not been under a disability from May 5, 2015, the alleged onset date, through the

date of his decision on October 2, 2017, and was, therefore, not entitled to a period of disability or disability insurance benefits.

Plaintiff appealed the ALJ's decision to the Appeals Counsel, and the Council affirmed. Plaintiff filed this action on August 23, 2018, pursuant to 42 U.S.C. § 405(g), contending that there were errors at multiple steps of the five-step analysis. He argues the ALJ (1) failed to recognize and consider all of his vocationally significant impairments at step two of the five-step sequential evaluation; (2) improperly substituted his own medical judgment for the medical opinion evidence of record; and (3) failed to carry his burden of establishing the existence of other work, in significant numbers, that Plaintiff can perform.

On July 9, 2019, the magistrate judge issued his Report recommending the Court affirm the Commissioner's determination that Plaintiff was not entitled to a period of disability or disability insurance benefits. Notably, the magistrate judge agreed with Plaintiff that the ALJ applied an improper legal standard in evaluating the severity of his impairments at step two of the five-step sequential analysis. The magistrate judge found, however, that "this error is irrelevant because [the ALJ] proceeded past step two of the sequential evaluation." Report 8, ECF No. 17. The magistrate judge further concluded that even were the ALJ's error at step two relevant, "it did not affect Plaintiff's substantial rights because sufficient evidence supported the ALJ's determination that Plaintiff did not have a severe affective disorder in the form of depression." *Id.* The magistrate judge also found that the "ALJ properly interpreted the medical opinion evidence of record rather than substituting his medical judgment." *Id.* at 14. Finally, the magistrate judge rejected Plaintiff's argument that the ALJ failed to carry his burden of establishing the existence of other work, in significant numbers, that Plaintiff can perform. *Id.*

On July 15, 2019, Plaintiff filed objections to the Report. The Commissioner did not file a response to Plaintiff's objections.

## II.  LEGAL STANDARD

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Austin v. Shalala*, 994 F.2d 1170, 1147 (5th Cir. 1993). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Richardson v. Perales,* 402 U.S. 389, 401 (1977); *accord Copeland*, 771 F.3d at 923. It is more then a scintilla, but less than a preponderance. *Boyd*, 239 F.3d at 704; *Perales*, 402 U.S. at 401; *Haywood v. Sullivan,* 888 F.2d 1463, 1466 (5th Cir. 1989). The district court may not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Copeland*, 771 F.3d at 924; *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The Court must scrutinize the record, however, to ascertain whether substantial evidence supports the Commissioner's findings. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). A finding of no substantial evidence is appropriate only when there is no medical evidence or credible evidentiary choices in the record to support the Commissioner's decision. *Johnson*, 864 F.2d at 343-44. If the findings are supported by substantial evidence, "they are conclusive and must be affirmed." 42 U.S.C. § 405(g). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923 (citation omitted).

A disabled worker is entitled to monthly benefits under the Social Security Act if certain conditions are met. 42 U.S.C. §423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of twelve months. *Id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler,* 750 F.2d 391, 393 (5th Cir. 1985).

The Commissioner has promulgated a five-step sequential process to be used by hearing officers in evaluating a disability claim. *See* 20 C.F.R. § 404.1520(b)-(f); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir 2007). The hearing officer is required to ascertain: (1) whether the claimant is currently engaging in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant has an impairment that "meets or equals a listed impairment in Appendix 1" of the regulations; (4) if the claimant has a "severe impairment" under the regulations, whether the claimant can perform his past work despite any limitations; and (5) if the claimant does not have the residual functional capacity to perform past work, whether the claimant can perform any other gainful and substantial work in the economy, considering his age, education, work experience, and residual functional capacity. 20 C.F.R. § 404.1520(b)-(f). In the first four steps of the evaluation process, the claimant bears the burden of proving disability; on the fifth step, the burden shifts to the Commissioner to show that there is substantial work in the national economy that claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 146 (1987); *Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and

terminates the analysis. *Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citation omitted).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (citing *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989) (per curiam); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984)). If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* (citing *Kane*, 731 F.2d at 1219). However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012)—that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448 (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam)). "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22 (citing *Kane*, 731 F.2d at 1220). Otherwise stated, Plaintiff "must show that [he] could and would have adduced

evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996) (per curiam) (citing *Kane*, 731 F.2d at 1220).

## III.    ANALYSIS

Plaintiff objects to the magistrate judge's finding that the ALJ's application of an improper legal standard to evaluate the severity of his impairments was harmless. Plaintiff contends that the error was not harmless because, by misapplying the requisite legal standard at step two, the ALJ overlooked his vocationally significant depressive disorder, resulting in an improper application of the Commissioner's vocational rules to direct a conclusion of non-disability in the presence of a vocationally significant nonexertional impairment. Plaintiff objects to the magistrate judge's related finding that any error by the ALJ at step two is irrelevant because substantial medical evidence supports the ALJ's finding that Plaintiff does not have a severe affective disorder. The Court considers these objections in turn.

### A.    *Stone* Error

Plaintiff contends the magistrate judge erred in finding that the ALJ's use of an improper standard to evaluate the severity of his impairments was harmless and, therefore, remand was not required. He argues that the ALJ's use of an improper legal standard at step two of the five-step sequential analysis was not harmless and requires remand because the ALJ failed to find that Plaintiff's depression was a severe impairment at step two, and this affected his RFC and, therefore, his ability to work at step five. For the reasons that follow, the Court **overrules** Plaintiff's first objection.

At step two of the sequential evaluation process, the ALJ "must consider the medical severity of [the claimant's] impairments." 20 C.F.R. § 404.1520(a)(4)(ii), (c). To comply with this regulation,

the ALJ "must determine whether any identified impairments are 'severe' or 'not severe.'" *Herrera v. Comm'r of Soc. Sec.*, 406 F. App'x 899, 903 (5th Cir. 2010) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)(ii), (c)). Under the Commissioner's regulations, a severe impairment is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Finding that a literal application of this regulation would be inconsistent with the Social Security Act, the Fifth Circuit has held that an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Stone v. Heckler*, 752 F.2d 1099, 1101, 1105-05 (5th Cir. 1985). Additionally, the determination of severity may not be "made without regard to the individual's ability to perform substantial gainful activity." *Id.* at 1104.

To ensure that the regulatory standard for severity does not limit a claimant's rights, the Fifth Circuit held in *Stone* that it would assume that the "ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) is used." *Id.* at 1106; *accord Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). Notwithstanding this presumption, courts must look beyond the use of "magic words" and determine whether the ALJ applied the correct severity standard. *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986).

In this case, as the magistrate judge correctly recognized, the ALJ did not cite to *Stone* or apply the *Stone* standard at step two of the five-step analysis. The ALJ identified an impairment as "severe," if it "significantly limits an individual's ability to perform basic work activities." He

defined an impairment as not severe if it would "have no more than a minimal effect on an individual's ability to work." Tr. 16, ECF No. 12-1. The *Stone* standard for determining severity provides no allowance for even a minimal interference with a claimant's ability to work. *Murphy v. Berryhill*, 2018 WL 4568808, at *14 (N.D. Tex. Sept. 24, 2018); *see also Craaybeek v. Astrue*, 2011 WL 539132, at *6 (N.D. Tex. Feb. 7, 2011) (determining the "minimal effect" standard is "wholly inconsistent with *Stone*").

In the past, this error alone would have been grounds for automatic remand, as it constituted legal error. *See, e.g.*, *Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805-06 (N.D. Tex. Jan. 27, 2009). As the magistrate judge correctly noted in rejecting Plaintiff's argument that reversal was mandatory due to the ALJ's *Stone* error, in the Fifth Circuit, *Stone* error does not mandate automatic reversal and remand. Rather, application of harmless error analysis is appropriate in cases where the ALJ proceeds past step two in the sequential evaluation process and considers the impairments in the subsequent stages of the five-step analysis. *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (per curiam) (applying harmless error analysis where the ALJ failed to cite *Stone* at step two but proceeded to steps four and five of the sequential evaluation process); *Connie G. v. Berryhill*, 2019 WL 1294441, at *4 (N.D. Tex. Mar. 21, 2019) (recognizing that "harmless error analysis is appropriate in deciding whether the ALJ's *Stone* error requires remand [] in cases where the ALJ proceeds past step two in the sequential evaluation.") (and collecting cases); *Caperton v. Berryhill*, 2018 WL 1899306, at *3 (N.D. Tex. Apr. 19, 2018) (citing *Holmes v. Astrue*, 2013 WL 638830, at *10 (N.D. Tex. Jan. 25, 2013) (holding that error under *Stone*, potentially causing ALJ not to recognize certain impairments as severe at step two, was harmless because ALJ considered the impairments in the RFC assessment)); *Murphy*, 2018 WL 4568808, at *14; *McDaniel v. Colvin*,

2015 WL 1169919, at *3 (N.D. Tex. Mar. 13, 2015) (O'Connor, J.) ("Under *Taylor*, therefore, a *Stone* error no longer requires automatic remand but instead is subject to a harmless-error analysis."); *Reed v. Colvin*, 2013 WL 5314438, at *5 (N.D. Tex. Sept. 23, 2013) (O'Connor, J.) ("*Stone* error may be harmless if the ALJ continues beyond step 2 of the sequential analysis."); *see also Herrera v. Comm'r*, 406 F. App'x 899, 903 (5th Cir. Dec. 30, 2010) (per curiam) (holding that "ALJ's failure to assess the severity of [a claimant's] impairments at step two is not a basis for remand" where the ALJ proceeds beyond step two and determines that a claimant, despite severe impairments, "retained the residual functional capacity to do other work.").

Accordingly, to prevail on his objection, Plaintiff must show that the ALJ's step two error was not harmless. *See Garcia v. Astrue*, 2012 WL 13716, at *12 (S.D. Tex. Jan. 3, 2012) ("Assuming ... that the ALJ erred in failing to specifically address whether Plaintiff's right leg venous thrombosis was a severe impairment, the next question is whether the ALJ committed reversible error."). In the Fifth Circuit, harmless error exists when it is "inconceivable" that a different administrative determination would have been reached absent the error. *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)).

Here, having reviewed the administrative record and legal briefing *de novo*, the Court agrees with the magistrate judge that the ALJ's *Stone* error was harmless. Specifically, the ALJ explains that in assessing Plaintiff's RFC,[2] he considered "all [of Plaintiff's] symptoms and the extent to

---

[2] "Residual functional capacity" or "RFC" refers to the claimant's ability to do work despite any physical or mental impairments. 20 C.F.R. § 404.1545(a). The ALJ is responsible for assessing and determining residual functional capacity at the administrative hearing level. *Id.* § 404.1546. "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. The assessment should be based on all the relevant evidence in the case record, including opinions submitted by treating physicians or other acceptable medical sources. 20 C.F.R. § 404.1545; SSR 96-8p. The RFC assessment "must include a resolution of any inconsistencies in the evidence." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).

Order - Page 10

which these symptoms [could] reasonably be accepted as consistent with objective medical evidence and other evidence." Tr. 21, ECF No. 12-1. Consideration of "all of the relevant medical and other evidence" as well as all "medically determinable impairments ... including [those] that are not 'severe'" is required when determining a claimant's RFC. *See* 20 C.F.R. § 404.1545(a)(1)-(3). The ALJ's RFC narrative discussion shows he considered Plaintiff's mental impairments when determining his RFC and, therefore, his capacity to work. In his RFC narrative, the ALJ discusses medical opinions and diagnoses regarding Plaintiff's mental health by his various treating and evaluating physicians, including state agency consultative examiner Dr. James Jensen, state agency medical consultants, and Dr. Kyle Babick. *See* Tr. 21-26, ECF No. 12-1. Thus, the ALJ considered Plaintiff's medical impairment of depression, even though he found it was not severe at step two, and decided that a finding of vocational impairments related to his depression was not supported by the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir.1988) (holding that ALJ is not required to incorporate limitations in RFC that she did not find to be supported in the record). To the extent that the ALJ rejected a diagnosis of severe affective disorder by Dr. Mark Shade, as the trier of fact, he was entitled to do so if he found it was not supported by the objective medical evidence. *See Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) ("Conflicts in the evidence are for the [ALJ] ... to resolve."). This is not a case in which the ALJ failed to consider impairments at all. *Cf. Hitchcock v. Berryhill*, 2019 WL 1128866, at *8 (N.D. Tex. Mar. 12, 2019) ("Because the ALJ made his disability determination and denied benefits at step two based on an incorrect severity standard, *and he did not proceed to the remaining steps of the disability evaluation process*, harmless error analysis is unnecessary, and his *Stone* error requires remand.") (emphasis added); *Connie G. v. Berryhill*, 2019 WL 1294441, at *5 (same).

For these reasons, the Court **overrules** Plaintiff's objection. The Court agrees with and accepts the magistrate judge's finding that, although the ALJ committed a *Stone* error at step two of the five-step sequential analysis, any error was harmless because the ALJ proceeded beyond step two and determined that Plaintiff, despite severe impairments of degenerative disc disease of the lumbar spine and osteoarthritis of the left shoulder, and a non-severe impairment of depression, retained the residual functional capacity to do other work. *See Taylor*, 706 F.3d at 603 (finding that the ALJ's failure to cite to *Stone* at step two was harmless, and "remand [was] not required since there [was] no evidence in the record that [the claimant's] mental health claims [were] severe enough to prevent him from holding substantial gainful employment" at step five); *Goodman v. Comm'r of Soc. Sec. Admin.*, 2012 WL 4473136, at *10 (N.D. Tex. Sept. 10, 2012), *report and recommendation adopted*, 2012 WL 4479253 (N.D. Tex. Sept. 28, 2012) (*Stone* error was harmless where the ALJ considered the effects of the claimant's mental impairments, including those that were not severe, on his ability to work at step four). Remand is, therefore, not required on this ground.

B.  **Severity of Impairment**

As his next objection, Plaintiff contends the magistrate judge erred in finding that any error by the ALJ at step two is irrelevant because substantial medical evidence supports the ALJ's finding that Plaintiff does not have a severe affective disorder. For the reasons that follow, Plaintiff's second objection is **overruled**.

Notwithstanding errors by an ALJ, remand is only necessary if the errors render the ALJ's determination unsupported by substantial evidence. *See generally Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (applying harmless error standard in social security cases); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (same); *see also Domingue v. Barnhart*, 388 F.3d 462, 463 (5th Cir.

2004) (remand necessary where record does not contain substantial evidence to support the ALJ's conclusions).

After considering the parties' legal briefs and the entirety of the record, the magistrate judge concluded as follows:

> The ALJ's error in applying an incorrect legal standard to the severity requirement did not affect Plaintiff's substantial rights. This is because the evidence in the record does not support a conclusion that Plaintiff has a severe affective disorder. The evidence that suggests otherwise comes from Plaintiff's self-reporting, which is inconsistent. (Tr. 173; Tr. 194-95; Tr. 200; Tr. 214-15; Tr. 254; Tr. 264; Tr. 275-76). The record reflects that Plaintiff can drive himself to doctor's appointments, weekly church services, and the store. (Tr. 36; Tr. 54; Tr. 273). Although he complains of being unable to concentrate and remember items, he watches television programs such as football; can calculate "serial 3's" with 100% accuracy, though not "serial 7's;" and recalled 1/3 items after a five-minute delay. (Tr. 40; Tr. 54). He does not require reminders; can follow instructions; and adapts fairly, or well, to changes in routine. (Tr. 54; Tr. 72-73; Tr. 194). Plaintiff remains socially interactive, attends weekly church services, and entertains family and friends who visit his home. (Tr. 42).
>
> During one of Plaintiff's consultative exams, a medical professional noted no history of depression and no treatment for emotional or mental conditions that affect his ability to work. (Tr. 53; Tr. 69; Tr. 176). His mood and affect were characterized as appropriate with no suggestive evidence of a mental condition and as having a minimal impact on his ability to engage in substantial gainful activity. (Tr. 54; Tr. 67; Tr. 261; Tr. 273). Consistently throughout the medical evidence of record, his concentration and ability to remember were ranked at either mild or moderate levels. (Tr. 55; Tr. 58-59).
>
> Although Plaintiff's mood or attitude may have been secondarily affected temporarily due to his lower back injury (Tr. 190; Tr. 194), his mood appears to have improved thereafter. (Tr. 423). As late as June 13, 2016, Plaintiff had not received psychological treatment or been prescribed anti-depressant medication, though his depression allegedly began shortly after his back injury in May 2015. (Tr. 274; Tr. 290).
>
> Additionally, Plaintiff saw Kyle Babick, Ph.D. on June 25, 2016. (Tr. 363). According to Dr. Babick, Plaintiff's medical records regarding depression stemmed from his self-reporting and were not verified. (*Id.*). During this consultation, Dr. Babick also noted that Plaintiff was "starting to have a depressed mood." (Tr. 364). Dr. Babick stated that he seemed discouraged and downcast at times, but the doctor

> did not observe psychotic processes; he had regained ten of the twenty to twenty-five pounds he had lost, he was "up and active" every day, and denied suicidal or homicidal thoughts. (Tr. 365). Dr. Babick assessed his depression at mild to moderate levels. (Tr. 367). Dr. Babick recommended that he receive psychological interventions "if he start[ed] to show symptoms of depression." (Tr. 368) (emphasis added). Dr. Babick elaborated on his recommendation by noting that Plaintiff's pain levels were mild to moderate, but that because he is "pain sensitive," he tends to "overreact" to the fear of potential pain or reinjury. (Tr. 369).
>
> Only after Dr. Babick's psychological report and recommendation did Plaintiff undergo cognitive behavioral therapy and cognitive pain management training to combat his depressive mood. (Tr. 369). On December 16, 2016, Dr. Babick wrote to one of Plaintiff's treating physicians, Amit Darnule, M.D., noting that he "was seen for individual psychotherapy and review of behavioral pain management techniques on September 29th, October 5th and 19th, and November 16th." (Tr. 423). Dr. Babick informed Dr. Darnule that Plaintiff "continued to make progress, and [that] this letter . . . serve[d] as a discharge note as well." (*Id.*).
>
> This substantial medical evidence of record supports the ALJ's conclusion that Plaintiff does not have a severe affective disorder. Thus, Plaintiff's rights were not affected by the ALJ's error in applying the incorrect legal standard of severity.

Report 8-11, ECF No. 17.

Having conducted a *de novo* review of the administrative record, legal briefing, the Report, and Plaintiff's objections, the Court agrees with the magistrate judge's finding that any error by the ALJ at step two is irrelevant because substantial medical evidence supports the ALJ's finding that Plaintiff does not have a severe affective disorder. Further, as summarized by the magistrate judge, the ALJ provided reasons for the weight he assigned to the various physicians' and consultants' diagnoses and opinions, including giving little weight to the opinion of state agency psychologist, Dr. Shade.

For these reasons, the Court rejects Plaintiff's argument that the magistrate judge erred in finding that any error by the ALJ at step two is irrelevant because substantial medical evidence

supports the ALJ's finding that Plaintiff does not have a severe affective disorder. Accordingly, the Court **overrules** Plaintiff's objection.

### C. The Medical-Vocational Guidelines

As his final objection, Plaintiff argues that the ALJ's *Stone* error was not harmless because it resulted in an improper application of the Commissioner's vocational rules to direct a conclusion of non-disability in the presence of a vocationally significant nonexertional impairment. Specifically, Plaintiff contends that the ALJ improperly relied on the Medical–Vocational Guidelines because he claims that he has a non-exertional impairment, namely, severe depression. At the fifth step of the sequential evaluation process, the ALJ considers the a plaintiff's age in combination with his RFC, education, and work experience to determine whether a plaintiff is capable of adjusting to and performing work that exists in substantial numbers in the national economy. *See* 20 C.F.R. § 404.1563(a) (2010); *Flores v. Astrue*, 2010 WL 3858173, at *2 (N.D. Tex. Aug.30, 2010), *rec. adopted*, 2010 WL 3856435 (N.D. Tex. Oct.4, 2010). The ALJ may consult the Medical-Vocational Guidelines (the "Grid Rules") to determine whether, given a plaintiff's vocational characteristics, work exists in the national economy that the claimant can perform. *See Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983). Located in the Commissioner's regulations at appendix 2 of part 404, the Grid Rules consist of rules that direct a finding of disability when a plaintiff's RFC, age, education, and previous work experience correspond to the job requirements under a particular rule. *See* 20 C.F.R., pt. 404, subpart P, app. 2. When a claimant suffers only from exertional impairments or his non-exertional impairments do not significantly affect his RFC, the ALJ may rely exclusively on the Grid Rules in determining whether there is other work available that the claimant can perform. *See*

20 C.F.R. § 404.1569 & pt. 404, subpart P, app. 2; *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir.1990).

Plaintiff's contention that the ALJ erred in relying on the Grid Rules depends on the ALJ's determination of whether Plaintiff's depression is a severe mental impairment, which would be a non-exertional impairment. In light of the Court's conclusion that the magistrate judge's findings are correct, that any *Stone* error was harmless, and that substantial evidence in the record supports the ALJ's determination that Plaintiff's depression was not severe, the ALJ's reliance on the Grid Rules is appropriate. Accordingly, the Court **overrules** Plaintiff's objection to the magistrate judge's finding that the ALJ's use of the Grid Rules is appropriate.

## IV.     CONCLUSION

For these reasons, the Court determines that the magistrate judge's findings and conclusions are correct and **ACCEPTS** them as those of the Court. Accordingly, the Court **OVERRULES** Plaintiff's objections, **AFFIRMS** the Commissioner's decision, and **DISMISSES** this appeal **with prejudice**.

**SO ORDERED** this **20th day** of **August, 2019.**

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**